**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH JANE KOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:20-CV-996 RLW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Sarah Jane Koss brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.  For the reasons that follow, the decision of the Commissioner is affirmed.

### I.  Procedural History

Plaintiff filed her application for DIB on April 3, 2018.  (Tr. 64-65).  Plaintiff alleged she had been unable to work since May 31, 2014, due to a bulging L-4-L-5 disc, sciatica, sacroiliac joint dysfunction, anxiety, depression, and attention deficit disorder ("ADD").  (Id.) Plaintiff's application was denied on initial consideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff and counsel appeared for a hearing on July 29, 2019. (Tr. 31-62).  Plaintiff testified concerning her disability, daily activities, functional limitations, and past work.  Id.   The ALJ also received testimony from vocational expert ("VE") Deborah

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Determan. Id.   On August 27, 2019, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 10-25). Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  On May 29, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). Plaintiff has exhausted her administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner subject to judicial review.  See 42 U.S.C. §§ 405(g), 1383(c)(3).

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence in the record as a whole.  Specifically, Plaintiff argues the ALJ's findings regarding Plaintiff's residual functional capacity ("RFC") are not supported by the medical evidence in that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician. Plaintiff also argues that the ALJ concluded the opinion of a consulting medical source was persuasive, but she failed to incorporate some of his assessed limitations into the RFC.  Plaintiff requests that the decision of the Commissioner be reversed, and the matter be remanded for an award of benefits or for further evaluation.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses.[2] The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.  Legal Standard

To be eligible for DIB under the Social Security Act, plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

---

[2]Plaintiff offered no denials as to Defendant's Response to Plaintiff's Statement of Uncontroverted Material Facts, including the Defendant's additions and clarification as to Plaintiff's own submission of facts.  (ECF No. 24)

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his or her ability to do basic work activities.  If the claimant's impairment is not severe, then he or she is not disabled.  Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At the fourth step, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also  20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC, and the Commissioner is responsible for developing the

claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

In the fifth step, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires

a more scrutinizing analysis." Id. (internal quotation marks and citations omitted).  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

### III.  The ALJ's Decision

In a decision dated August 27, 2019, the ALJ applied the above five-step analysis and found Plaintiff had not engaged in substantial gainful activity since May 31, 2014; Plaintiff has the severe impairments of obesity status post-bariatric surgery, degenerative disc disease, degenerative joint disease, major depressive disorder, post-traumatic stress disorder ("PTSD"), attention-deficit hyperactivity disorder ("ADHA"), and anxiety. (Tr. at 13); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 14).

As for Plaintiff's RFC, the ALJ found Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] but that she had the following additional functional limitations:

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or

[Plaintiff] can lift and carry and push and pull twenty pounds occasionally and ten pounds frequently. She can sit for six hours in an eight- hour workday. She can stand and/or walk four hours in an eight-hour workday. She can occasionally climb ladders, ropes or scaffolds. She can occasionally stoop and crawl. She can frequently balance. She can perform simple, routine tasks and make simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public.

(Tr. 186).

At the fourth step, the ALJ found Plaintiff was unable to perform her past relevant work. (Tr. 24). At the fifth step, relying on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including document preparer, addresser, and ampoule sealer, all of which had an exertion level of sedentary.[4]  (Tr. at 25).  At the end of her analysis, the ALJ concluded Plaintiff was not disabled.  (Tr. 25).

## IV.  Discussion

In her Brief in Support of Complaint, Plaintiff argues the ALJ did not make her RFC determination based on substantial evidence in the record.  Plaintiff argues the ALJ's RFC determination deviated from treatment records, and that the ALJ did not assign the proper weight to the medical opinions and findings in the record.  Plaintiff faults the ALJ for discounting the opinion of Stephanie Meyer, M.D., Plaintiff's treating physician.  Plaintiff also argues that the ALJ found the opinion of James Morgan, Ph.D., a non-examining, agency consultant, to be persuasive,

---

inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

but she failed to incorporate some of his assessed limitations into the RFC.  Defendant responds that the ALJ properly evaluated the medical opinions and findings under the regulations.

### A.   RFC Standard and Applicable Law.

RFC is what a claimant can do despite his or her limitations and includes an assessment of physical abilities and mental impairments. 20 C.F.R. §§ 404.1545, 416.945.  The RFC is a function-by-function assessment of an individual's ability to do work-related activities on a regular and continuing basis.  SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996).  "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).  It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017); Pearsall, 274 F.3d at 1217.  According to the Eighth Circuit, "Ultimately, the RFC determination is a 'medical question,' that 'must be supported by some medical evidence of [the claimant's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (quoting Combs, 878 F.3d at 646); see also Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (ALJ's RFC assessment must be supported by medical evidence).  Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (some medical evidence must support the determination of the claimant's RFC).  An ALJ's RFC determination should be upheld if it is supported by substantial evidence in the record.  See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

For claims like Plaintiff's that are filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings pursuant to 20 C.F.R. § 404.1520c.  These regulations provide that the Social Security Administration "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is to evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes: (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." 20 C.F.R. § 404.1520c(a)-(c).

Under the regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions and, therefore, an ALJ must explain how she considered the factors of supportability and consistency in her decision.[5] 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. Id.; see also Bonnett v. Kijakazi, 859 F. App'x 19, 20 (8th Cir. 2021) (ALJ must explain how both supportability and consistency factors are considered).

**B.  The ALJ's Evaluation of Medical Opinions Regarding Plaintiff's Physical Impairments.**

Plaintiff argues the ALJ erred by failing to properly evaluate and incorporate the opinion evidence of Dr. Meyer, Plaintiff's treating physician. Plaintiff first went to see Dr. Meyer in June

---

[5]"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

2016 to establish care.  (Tr. 384).  In her treatment notes, Dr. Meyer wrote, "[Plaintiff] is here to get established.  [Plaintiff] states she has no other concerns at this time."  (Tr. 384).  At her appointment, Plaintiff stated that she had been more active since her gastric sleeve surgery but had pain with sciatica down her right side.  Examination revealed mild musculoskeletal tenderness. (Tr. 386).  Dr. Meyer recommended daily exercise, and it was noted that imagining and pain management were scheduled.  (Tr. 386).  Subsequently, on June 24, 2016, MRI images of Plaintiff's lumbar spine revealed L4-L5 disc bulging and an incidental L5 vertebral body hemangioma. (Tr. 597).  Plaintiff had no disc herniation or stenosis.  (Tr. 597).

Plaintiff was seen two other times by Dr. Meyer in the fall of 2016 for well-woman exams. At these appointments, Plaintiff endorsed balance problems.  (Tr. 388, 425).   In February 2017, Plaintiff was seen by Dr. Meyer for an upper respiratory infection.  (Tr. 393).

In April 2018, Plaintiff saw Dr. Meyer for pain in her legs.  She was diagnosed with varicose veins.  It was noted that Plaintiff was not experiencing pain in her back, and that the pain in her legs did not radiate.  (Tr. 395).

On May 18, 2019, Dr. Meyer completed a Physical RFC and Medical Source Statement. Dr. Meyer indicated that Plaintiff's only diagnosis was lumbago with "aching back pain," and her prognosis was "fair."  (Tr. 1205).   Dr. Meyer noted that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations, and she had no psychological conditions affecting her physical condition.  (Tr. 1205).  Dr. Meyer did opine that Plaintiff's back pain would frequently interfere with attention and concentration needed to perform even simple work tasks.  She wrote Plaintiff was cable of low stress jobs.  (Tr. 1206).  Dr. Meyer further opined that Plaintiff could walk one city block; that she could sit for ten minutes at a time, stand for ten minutes as a time, and could only sit or stand less than two hours in a workday.  Dr. Meyer wrote that Plaintiff would need to shift positions and take unscheduled breaks, although she noted it was

"unknown" how often or for how long.  (Tr. 1207).  Dr. Meyer opined Plaintiff could lift less than

ten pounds frequently, but never more than ten pounds.  Dr. Meyer stated that it was "unknown"

if Plaintiff could look down, turn her head right or left, look up, hold head in static position, twist,

stoop, crouch/squat, climb ladders, or climb stairs.  Dr. Meyer also stated it was "unknown" if

Plaintiff had any fingering impairments or if she was likely to be absent as a result of her

impairments or treatment.  (Tr. 1207).

Plaintiff was seen by Dr. Meyer two other times following her assessment.  Plaintiff came

to see Dr. Meyer on June 11, 2018, reporting pain in her neck, shoulders, back, legs, which was

worse with stress.  Dr. Meyer wrote in her treatment notes, "[Plaintiff] states that she aches all

over and would like to know why." (Tr. 979). Examination revealed musculoskeletal tenderness.

(Tr. 980).   Dr. Meyer recommended Plaintiff be screened for rheumatoid arthritis and

fibromyalgia.  (Tr. 980).  Following the testing, Plaintiff returned to Dr. Meyer on June 18, 2018,

again reporting pain all over her body.  (Tr. 977).  Plaintiff's laboratory results were normal, but

again examination revealed musculoskeletal tenderness.  (Tr. 977, 979).  Plaintiff was prescribed

vitamin D2 tablets and prednisone.  (Tr. 978).  Dr. Meyer wrote in her treatment notes, "mostly

likely fibro[myalgia].  Will check for tick borne illness and monitor. +/- follow up with rheum."

(Tr. 978).

In her decision, the ALJ found Dr. Meyer's opinion regarding Plaintiff's physical

impairments not to be persuasive.  The ALJ wrote the following:

> The findings by Dr. Meyer within the above-noted assessment are not only
> inconsistent with the record as a whole, but with the clinical findings and objective
> signs within Dr. Meyer's treatment records. Dr. Meyer noted the claimant's pain
> would frequently interfere with the [Plaintiff]'s attention and concentration, yet the
> treatment records routinely indicate the [Plaintiff] was in no distress, she was
> cooperative, and she had a normal mood and affect. The other medical records note
> the [Plaintiff] was engaged and cooperative and she had a normal mood and affect.
> In addition, Dr. Meyer noted some functional limitations, yet noted unknown for
> activities such as bending, squatting, reaching, etc., which are usually postures that

are observed or rated with complaints such as back pain joint pain, etc.  Therefore, the undersigned does not find the assessment by Dr. Meyer to be persuasive.

(Tr. 22).

At the outset, the Court notes that under the new regulations, supportability and consistency "are the most important factors" to consider when determining the persuasiveness of a medical source's medical opinions, and these are the only two factors an ALJ must address when explaining the weight, he or she assigned a medical opinion. 20 C.F.R. § 404.1520c(b)(2); see also Brian O. v. Comm'r of Soc. Sec., No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *1 (N.D.N.Y. June 10, 2020). When evaluating a medical opinion, an ALJ should consider the other factors, but it is not error to omit discussion of these factors in a written decision. Id.  Plaintiff argues Dr. Meyer's opinion is consistent with her own treatment notes, as well as the medical evidence in the record, and it was error for the ALJ to find otherwise.

In support of her argument that Dr. Meyer's assessment is consistent with her treatment notes, Plaintiff points to the fact that in June 2016, Plaintiff presented to Dr. Meyer with musculoskeletal tenderness, and an MRI revealed -L5 bulging and an incidental L5 vertebral body hemangioma, and Plaintiff was referred to pain management at this time. The record does show that when Plaintiff first established care with Dr. Meyer in 2016, she did complain of back pain, which was supported by imagining.  But Plaintiff did not return to Dr. Meyer for pain until April 2018, at which time she was diagnosed with varicose veins.  Notably, during this visit Dr. Meyer did not indicate Plaintiff was suffering from back pain.  The treatment notes reveal Plaintiff complained of pain in her legs, which did not radiate.  (Tr. 395).  Dr. Meyer completed her assessment a month after this visit.  In her assessment, Dr. Meyer wrote that Plaintiff's only diagnosis was lumbago, and her only symptom was "aching back pain."  (Tr. 1205).  This is not consistent with Dr. Meyer's own treatment notes at the time.

11

Plaintiff did return to Dr. Meyer after the doctor completed her assessment, but again, it was not for back pain. Plaintiff presented with generalized pain all over her body, which increased with stress.  Dr. Meyer evaluated Plaintiff for fibromyalgia, rheumatoid arthritis, or a tick-borne illness, and tests were performed; however, none were conclusive.  In addition, in her assessment Dr. Meyer opined that Plaintiff's back pain would frequently interfere with her attention and concentration, however, as the ALJ noted, during the times Plaintiff visited Dr. Meyer, the doctor frequently observed that Plaintiff was engaged, cooperative, and in no acute distress with normal mood and affect.  (Tr. 22, 338, 443 537-38, 555, 1014, 1206).  The Court finds there is evidence in the record to support the ALJ's conclusion that Dr. Meyer's assessment was inconsistent with and not supported by her own treatment notes.

The ALJ also faulted Dr. Meyer's assessment because it was internally inconsistent.  Dr. Meyer opined that due to her back pain, Plaintiff had marked mobility impairments.  For, example she limited Plaintiff to standing for ten minutes and walking for ten minutes at a time.  That said, Dr. Meyer indicated that she was unable to offer an opinion as to Plaintiff's ability to turn her head, hold her head in a static position, twist, stoop, crouch/squat, climb ladders, or climb stairs.  The doctor wrote that Plaintiff's ability to perform these functions was "unknown."  (Tr. 1206).  As the Plaintiff herself notes, Dr. Meyer had a "longitudinal treating relationship" with Plaintiff and was knowledgeable about her various impairments including her back pain.  (ECF No. 17 at 5).  During Plaintiff's physical exams, Dr. Meyer's assessed Plaintiff's musculoskeletal system and tested her range of motion.  (See, e.g., Tr. 976).  The Court agrees with the ALJ that turning, twisting, stooping, crouching/squatting are usually postures that are observed or rated with complaints of back pain. There is nothing in the record to suggest that the doctor did not have information to offer an opinion as to Plaintiff's ability to perform these functions, yet she indicated she could not. Considering Dr. Meyer's treatment relationship with Plaintiff, and the fact that the

doctor had opined Plaintiff was markedly impaired in her ability to walk, stand, and lift and carry objects due to back pain, it was not improper for the ALJ to have discounted the doctor's opinion based on the fact that she indicated it was "unknown" whether Plaintiff could perform other physical postures, which are typically evaluated with back pain.

Plaintiff further argues that Dr. Meyer's opinion is consistent with other medical evidence in the record.  In support of her argument, she points to the fact that she frequently sought treatment for pain management and received regular injections.  As Defendant admits in her response brief, at one point in her decision, the ALJ inaccurately stated that Plaintiff did not seek regular treatment through a pain clinic. (Tr. 22).  But the Court agrees with Defendant that the ALJ's decision as a whole makes it clear that the ALJ did consider Plaintiff's pain management treatment.  The ALJ detailed Plaintiff's medical records in over five single-spaced pages, and she expressly recognized Plaintiff's treatment at the "Center For Interventional Pain Management" for "complaints of chronic low back pain." (Tr. 20). The ALJ further noted that Plaintiff underwent a series of injections, and that in November 2017, she reported to her internist that she received two injections each month "for SI joint dysfunction."  (Tr. 20, 21).

The fact Plaintiff received treatment at a pain clinic, however, is not in of itself conclusive evidence that she is as impaired as Dr. Meyer opined.  The medical records do reflect that beginning in late 2017 and throughout 2018 and 2019, Plaintiff received a series of injections for pain. (Tr. 17, 20, 41, 1058-59, 1083, 1087, 1089-1096, 1107-1112). But notably, Plaintiff received relief from the treatment.  The records show that following her injections Plaintiff experienced immediate relief from her pain symptoms.  (Tr. 355, 358, 1058-59, 1083, 1109).  For example, in January 2018, after receiving an injection, Plaintiff reported she experienced "immediate reduction in pre-procedure symptomology with normal ranges of motion."  (Tr. 355).  Contrary to Plaintiff's claim, the ALJ did not mischaracterize the medical evidence.  Despite her one misstatement, the

ALJ acknowledged that Plaintiff was regularly treated at a pain clinic and was receiving injections for her pain.  It was not error for the ALJ to conclude that Dr. Meyer's opinion – that Plaintiff was markedly impaired due to her back pain – was inconsistent with the medical record as a whole, as there is evidence that the injections Plaintiff received were effective in treating her pain.  See Hensley, 829 F.3d at 931–32 (if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

In arguing that the ALJ improperly discounted Dr. Meyer's opinion, Plaintiff focusses primarily on the treatment she received for her back pain.  But in addition to medical records, the ALJ looked to other evidence in the record, including Plaintiff's self-reported activities.  Dr. Meyer's opinion was inconsistent with other evidence in the record, which, as discussed by the ALJ, showed that Plaintiff performed a wide range of physical activities.  Dr. Meyer opined Plaintiff could walk one city block; that she could sit for ten minutes at a time, stand for ten minutes as a time, and could only sit or stand less than two hours in a workday.  But evidence in the record shows Plaintiff was more active than Dr. Meyer's opinion would suggest.

In her decision, the ALJ listed a number of activities from the record that conflicted with Dr. Meyer's opinion.  The ALJ pointed to the fact that Plaintiff testified she was able travel by car from St. Louis to New Orleans in 2016 and to Colorado in 2018 – trips that would have taken over ten hours of driving, one way.   The ALJ noted Plaintiff did some cooking, laundry, cleaned counters, drove, shopped in stores, took her children to appointments, and attended parent-teacher conferences.  (Tr. 15, 17-18, 44-49, 52, 191-95, 199, 337 339, 343-44, 496, 975).  In her decision, the ALJ indicated that Plaintiff reported that she walked for exercise.  In 2016, Plaintiff was walking three to four times a week, and in 2017 she was walking 30-40 minutes every night.  The ALJ also wrote that Plaintiff reported that she swam "a lot," which is supported by the record. (Tr. 19, 193, 282, 285-85, 496, 511).  In 2017, Plaintiff reported to a provider that she had been "very

active" during the process of moving to a new home, and one point, Plaintiff told a provider that she sometimes shopped for hours at a time. (Tr. 339, 343-44, 496, 975, 1001).  The ALJ remarked that Plaintiff's providers recommended physical exercise to Plaintiff, which is supported by the record.  Dr. Meyer herself recommended Plaintiff increase her physical activity in June 2016, and another treating doctor instructed Plaintiff to walk 10,000 steps per day with a goal of 150 minutes of activity per week.  (Tr. 18, 239, 280, 284, 290, 295, 384).  As the ALJ wrote in her decision, this evidence weighed against Plaintiff's allegations of disabling back pain and conflicted with Dr. Meyer's assessment of significant mobility limitations. See Thomas v. Berryhill, 881 F.3d 672, 676 (8th Cir. 2018) (daily activities including preparing meals, doing housework, shopping, watching television, and driving conflicted with allegations of disability); Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013) ("In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations.").

The ALJ found Dr. Meyer's assessment was inconsistent and not supported by the record as a whole.  There is evidence in the record to support the ALJ's conclusion that Dr. Meyer's opinion was inconsistent with her own treatment notes, as well as being internally inconsistent. Furthermore, there is evidence in the record to support the ALJ's conclusion that Dr. Meyer's opinion about Plaintiff's physical limitations, notably as to walking, standing, and sitting, was not supported by the doctor's own treatment notes or the record as a whole.  Plaintiff's argument that the ALJ failed to properly evaluate and incorporate the opinion evidence of Dr. Meyer is without merit.

### C.     The ALJ's Evaluation of Medical Opinions Regarding Plaintiff's Mental Impairments.

Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence in the record in that she found the opinion of James Morgan, Ph.D., a non-examining

consultant, to be persuasive, but she failed to incorporate some of his opinions about Plaintiff's mental limitations into the RFC determination.

On July 27, 2018, non-examining state agency consultant, Dr. Morgan, completed a mental RFC assessment. (Tr. 75). Dr. Morgan opined that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions.  He did opine that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, based on the fact that Plaintiff reported she needed things to be repeated in order to learn effectively, and that she learned best with verbal instructions.[6] (Tr. 76). He found Plaintiff had moderate limitations in her ability to carry out detailed instructions, in her ability to maintain attention and concentration for extended periods, and in her ability to work in coordination with or in proximity to others without being distracted by them. (Tr. 76). Dr. Morgan opined that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.  He did note that Plaintiff reported difficulty staying focused and completing tasks, although this was improved with medication. And that she reported her pain distracted her and kept her from completing tasks all the way through. (Tr. 76). Dr. Morgan found Plaintiff had moderate limitations in her ability to interact appropriately with the general public, in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 76-77). Dr. Morgan explained that Plaintiff has difficulties due to social anxiety, interacting with people with whom she is unfamiliar, and handling confrontation. (Tr. 77).  He also found Plaintiff had moderate limitations in her ability to respond appropriately to criticism from

---

[6]Elsewhere in his report, Dr. Morgan found Plaintiff's overall ability to understand, remember, or apply information was only mildly impaired.  (Tr. 70).

supervisors, and in her ability to set realistic goals or make plans independently of others. (Tr. 77).

Dr. Morgan explained that Plaintiff reported that she was able to manage her anger but did not feel

in control of her anxiety and depression, and her stress tolerance was low. (Tr. 77). Overall, Dr.

Morgan found Plaintiff was capable of performing moderately complex tasks with limited

interpersonal demands. (Tr. 77).

In her decision, the ALJ summarized Mr. Morgan's report and wrote the following

regarding his assessment: "The assessment by Dr. Morgan is generally consistent with the record

as a whole, particularly the findings by Dr. Knipp that the claimant had moderate limitations in

social interaction, concentration, and adapting to her environment. Thus, the undersigned finds

that the assessment by the state agency is also persuasive."  (Tr. 22).

After devoting a significant portion of her decision to summarizing the medical records,

expert opinions, and other evidence in the record, including Plaintiff's testimony and self-reported

activities, the ALJ made an RFC determination.  She found Plaintiff could perform light work,

with some additional physical limitations, and the following mental limitations: "[Plaintiff] can

perform simple, routine tasks and make simple work-related decisions. She can occasionally

interact with supervisors, coworkers, and the public."  (Tr. 16).

 Plaintiff faults the ALJ for crediting Dr. Morgan's opinion, while at the same time failing

to incorporate into the RFC some of mental impairments he identified.  More specifically, Plaintiff

points to the fact that the RFC does not provide for repetition in order to learn effectively or that

she learns best with verbal instructions. Additionally, Plaintiff acknowledges that RFC provides

for occasional social interaction, but she points out that Dr. Morgan noted Plaintiff has difficulties

due to social anxiety and, therefore, will have difficulty interacting with people with whom she is

unfamiliar and handling confrontation, both of which were not included in the RFC.  Plaintiff also

argues that the ALJ did not incorporate into the RFC Dr. Morgan's finding that Plaintiff's anxiety

and depression will impact her stress tolerance.  Citing <u>Fickler v. Colvin</u>, No. 8:11CV440, 2013 WL 1090405, at *25 (D. Neb. Mar. 15, 2013), Plaintiff argues the ALJ failed to build a logical bridge between Dr. Morgan's opinion and the RFC.  (ECF No. 17 at 13).

Under the regulations, it is the ALJ who is responsible for determining a claimant's RFC, not a medical source.  <u>See</u> 20 C.F.R.§ 404.154(c).  The RFC is a medial question, and an ALJ is required to consider at least some supporting evidence from a medical professional when making the determination, but it is not the only evidence an ALJ must consider. <u>Noerper</u>, 964 F.3d at 744; <u>Combs</u>, 878 F.3d at 646; <u>Steed</u>, 524 F.3d at 875.  <u>Lauer</u>, 245 F.3d at 704, <u>Dykes v. Apfel</u>, 223 F.3d 865, 866–67 (8th Cir. 2000). An ALJ is to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of his or her limitations. <u>Combs</u>, 878 F.3d at 646; <u>Pearsall</u>, 274 F.3d at 1217. Furthermore, an ALJ is not required to adopt or include all limitations assessed by a medical source, even if the source is found to be persuasive. <u>McCoy v. Astrue</u>, 648 F.3d 605, 615 (8th Cir. 2011) (in making an RFC determination, "we do not require an ALJ to mechanically list and reject every possible limitation."); <u>see</u> <u>also</u> <u>Cannady v. Colvin</u>, No. 4:14-CV-00372-NKL, 2015 WL 139762, at *5 (W.D. Mo. Jan. 12, 2015) (ALJ not required to adopt all limitations proposed by a medical source, even if the ALJ affords significant weight to the source's opinion); <u>McGee v. Colvin</u>, No. 14-04035-CV-C-DGK, 2015 WL 58484, at *4–5 (W.D. Mo. Jan. 5, 2015) ("[a]n ALJ is not required to refute every alleged limitation.").

The Court finds the ALJ was not required to include more specific mental impairments in the RFC determination.  With regard to Plaintiff's argument that the ALJ should have included that Plaintiff required repetition in order to learn effectively or that Plaintiff learns best with verbal instructions, in Dr. Morgan's assessment these statements were framed as Plaintiff's own subjective reports regarding her mental limitations, not the doctor's own conclusions.  (Tr. 76).  In

fact, these same subjective reports were noted by Vivian Knipp, Ph.D., during Plaintiff's consultive exam. Dr. Knipp wrote: "[Plaintiff] reports that she needs repeated review and drill to learn new things. She learns best with both verbal and hands-on instructions."  (Tr. 339).  Dr. Knipp also noted: "[Plaintiff] reports difficulty staying focused and completing tasks. She reports this was improved when she was taking a stimulant medication."  (Tr. 339).  Dr. Morgan used these statements to support his conclusions that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instruction, but that she had moderate limitations in her ability to understand and remember detailed instructions.  (Tr. 76).  The ALJ then incorporated Dr. Morgan's conclusions, which were shared by Dr. Knipp, into the RFC when she determined, "[Plaintiff] can perform <u>simple</u>, <u>routine</u> tasks and make <u>simple</u> work-related decisions." (Tr. 16) (emphasis added).  The fact that she did not include more specific limitations, such as repeated review and drills to learn new thing, or verbal, hands-on instructions, does not suggest that the ALJ "disregard[ed] evidence or ignore[d] potential limitations," <u>McCoy</u>, 648 F.3d at 615.  She simply did not incorporate every possible limitation, which she was not required to do.  <u>Id.</u>

As for Plaintiff's argument that the ALJ failed to include the fact that Plaintiff has difficulty interacting with people with whom she is unfamiliar and handling confrontation, the same analysis applies.  These statements were also included in Dr. Knipp's report, (Tr. 340), and Dr. Morgan used these statements to explain his conclusions that Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behaviors extremes.  (Tr. 77).   The ALJ, in turn, incorporated Dr. Morgan's conclusions, which were shared by Dr. Knipp, into the RFC when she determined, "[Plaintiff] can occasionally interact with supervisors, coworkers, and the public."  (Tr. 16).  Again, there is

nothing to suggest the ALJ disregarded evidence or ignored limitations.  McCoy, 648 F.3d at 615.

This broader limitation incorporates the more specific limitation regarding Plaintiff's ability to

interact with people.  The ALJ was not required to incorporate every specific limitation a medical

expert identified.  Id.

Finally, Plaintiff argues the ALJ did not address Dr. Morgan's assessment that "Plaintiff's

anxiety and depression will impact her stress tolerance."  (ECF No. 17 at 12).  This is not an

accurate characterization of the record.  Dr. Morgan did not conclude that Plaintiff's anxiety and

depression will impact her stress tolerance, but that Plaintiff reported she did not feel in control of

her depression and anxiety, and that her stress tolerance was low.  (Tr. 77).

From the record, it appears Dr. Morgan considered the medical records, as well as

Plaintiff's own subjective reports about her functioning when he assessed her mental limitations

and concluded, "[o]verall, [Plaintiff] is capable of performing moderate complex tasks with limited

interpersonal demands." (Tr. 77).  Dr. Morgan repeated this overall conclusion in other portions

of his assessment. (Tr. 71) ("Overall, [Plaintiff] retains the capacity to perform moderate complex

tasks away from the public."); (Tr. 72) ("[Plaintiff] is also capable of performing moderate

complex tasks with limited interpersonal demands."). The ALJ credited Dr. Morgan's opinion and

incorporated his overall conclusion about the Plaintiff's mental limitations into the RFC when she

found, "[Plaintiff] can perform simple, routine tasks and make simple work-related decisions. She

can occasionally interact with supervisors, coworkers, and the public."  (Tr. 16).  Plaintiff's

argument that the ALJ failed to incorporate Dr. Morgan's opinion about Plaintiff's imitations into

her RFC determination is without merit.

## V.  Conclusion

The Court's task "is to determine whether the ALJ's decision 'complies with the relevant

legal standards and is supported by substantial evidence in the record as a whole.'"  Halverson v.

Astrue, 600 F.3d 922, 929 (8th Cir. 2010) (quoting Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008)).  The Court finds the ALJ's decision in this case is supported by substantial evidence in the record as a whole.  For the reasons set forth above, the Court finds it was not improper for the ALJ to have discounted Dr. Meyer's medical opinion regarding Plaintiff's physical impairments.  The ALJ's reasonings was supported by the record and in compliance with controlling law and Social Security guidelines.  The Court further finds the ALJ properly credited Dr. Morgan's assessment of Plaintiff's mental impairments, and his limitations were incorporated into the RFC.  There is nothing in the record to suggest the ALJ ignored evidence or disregarded Plaintiffs' mental impairments.

The ALJ reviewed the medical records before her and considered the limitations and restrictions imposed by the combined effects of all of Plaintiff's impairments, both physical and mental.  The ALJ considered Plaintiff's testimony and her described daily activities.  She also considered and evaluated opinion evidence from treating, examining, and consulting medical sources, and properly evaluated these opinions under the regulations.   In sum, after reviewing the record in this case, the Court finds the ALJ properly explained the basis for her RFC determination, and there is substantial evidence in the record as a whole to support the ALJ's findings and conclusions.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and

Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment will accompany this Memorandum and Order.

_Ronnie L. White_____

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this __10th___ day of March, 2022.